UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                            :
MAXWELL OWUSU,                                              :
                                                            :
                    Plaintiff,                              :
                                                            :
        -against-                                           :    **REPORT AND**
                                                            :    **RECOMMENDATION**
                                                            :    05 Civ. 10267 (KMK)(MDF)
JO ANNE B. BARNHART,                                        :
**Commissioner of Social Security,**                        :
                                                            :
                    Defendant.                              :
                                                            :
------------------------------------------------------------X

**TO:    THE HONORABLE KENNETH M. KARAS, U.S.D.J.**

Maxwell Owusu brings this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of the final decision of the Commissioner of Social Security (the "Commissioner"), finding that he was not entitled to disability insurance benefits under the Social Security Act (the "Act"). Currently pending before the Court are the Commissioner's motion and Plaintiff's cross-motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (Docs. ## 9, 10, 13, 14, 16).[1] Because I find that the Commissioner's decision regarding Plaintiff's claim is supported by substantial evidence, I respectfully recommend that your Honor grant the Commissioner's motion, deny Plaintiff's cross-motion, and dismiss the case.

## I. BACKGROUND

### A.    Procedural History

Plaintiff worked as a truck driver from October 1996 to July 2002. Administrative Record ("AR") 60; *see also id.* 294. On July 15, 2003, Plaintiff applied for disability insurance

---

[1]Plaintiff's cross-motion consists solely of a Memorandum of Law.

benefits, claiming injuries to his head, back, neck, legs, arms, and hip as a result of falling 13 feet off the top of a tractor-trailer truck. *Id.* 48-51, 59-60. The application was denied on October 1, 2003, *id*. 20-24, and Plaintiff thereafter requested a hearing by an Administrative Law Judge ("ALJ"). *Id.* 25-26. Following the May 17, 2005 hearing, the ALJ issued a decision, on July 22, 2005, finding that Plaintiff was not disabled within the meaning of the Act and denying his claim. *Id*. 11-18. Plaintiff filed a request for review of the ALJ's decision with the Appeals Council. *Id*. 7. On October 14, 2005, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. *Id.* 4-6.

On December 7, 2005, Plaintiff commenced the instant action in this Court (Doc. # 1), alleging that the ALJ erroneously denied his application for disability benefits. After filing an Answer (Docs. ## 7, 8), the Commissioner filed a motion for judgment on the pleadings on the ground that the ALJ's decision was supported by substantial evidence. Plaintiff cross-moved for judgment on the pleadings, arguing that the Commissioner failed to sustain her burden of proving that Plaintiff could perform other jobs in the local or regional economy, or, in the alternative, that the case should be remanded to the Commissioner for further development of the record on the issue of Plaintiff's ability to make an adjustment to other work.

### B. **Medical Evidence**

On July 18, 2002, Plaintiff fell off the top of his trailer truck and was admitted to St. Joseph's Medical Center in Yonkers, New York, where he stayed until July 24, 2002. AR 94-123. As a result of the fall, he sustained trauma to his lower back and suffered from severe low back pain radiating to both lower extremities. *Id.* 108. An x-ray of the lumbosacral spine did not show any acute fracture. *Id.* An MRI of the lumbosacral spine and a CAT scan of both the

lumbosacral spine and cervical spine revealed spina bifida occulta in the cervical spine, C7 to T1 and at S1, but no acute changes consistent with acute compression fracture or fractures of the vertebral bodies. *Id.* Pelvic x-rays were also negative. *Id.* He was status post-traumatic bilateral lumbosacral radiculopathy, severe muscle spasm, resulting in gait dysfunction; his neurological evaluation was otherwise negative. *Id.* 109. Upon discharge, Plaintiff's final diagnosis was status post-fall with bulging discs in lumbar area L2-L5. *Id.* 95. His condition at discharge was stable, but he needed a wheelchair for ambulation. *Id.* He was permitted to engage in minimal activity, as tolerated, was prescribed medications, and was told to follow up with rehabilitation and physical therapy. *Id.*

Following his time in the hospital, Plaintiff received treatment from 626 McLean Avenue Medical, P.C., which later became S.V. Medical, P.C. *Id.* 125, 129-31, 133-50, 152-65, 172-73, 178-228A, 273-74, 276-86, 290. He was also regularly examined by Dr. John Mitamura, a specialist in orthopedics and spinal surgery. *Id.* 124, 126-27, 151, 237-56, 259-66, 268-72, 295-98, 300. Below is a summary of the rather extensive medical evidence in the record.

In his initial evaluation on August 7, 2002, Dr. Mohammad Hafeez of 626 McLean Avenue Medical diagnosed Plaintiff with post-traumatic low-back pain and mid-back pain and bilateral hip pain radiating to the legs which was more severe on the right side. *Id.* 183. At the time, Plaintiff's range of motion of the lumbar spine was severely impaired and painful, and his range of motion of both hip joints was impaired, more severe on the right side with associated severe pain. *Id.* His bilateral straight leg raising was positive. *Id.* His neurological exam showed normal tone and power in all four limbs. *Id.* He used a walker and wore a lumbar brace.

*Id.* 182-83. Dr. Hafeez recommended a program of physical therapy three times a week. *Id.* 183. He found that Plaintiff was currently disabled and unable to work. *Id.*

Dr. Mitamura's initial examination on August 14, 2002, noted that Plaintiff was unable to walk without a walker or a wheelchair. *Id.* 260. He found that Plaintiff had marked tenderness to the lumbar spine with pain on extension of the lumbar spine. *Id.* 261. He also found a lot of tenderness to the right greater trochanteric region. *Id.* He concluded that Plaintiff suffered from lumbar radiculopathy. *Id.*

A follow-up evaluation on September 24, 2002 by Dr. Sujata Vidyasagar, a neurologist with 626 McLean Avenue Medical, noted that while Plaintiff initially had severe pain in his right buttock, that had resolved itself. *Id.* 172. However, Plaintiff still had right-sided lower lumbar pain, which radiated down his entire right lower extremity along the lateral aspect of the leg into the foot. *Id.* While Plaintiff had initially been using a wheelchair, his symptoms had improved so that he was able to walk at times with a cane. *Id.* Physical therapy three times a week was found to be of some benefit. *Id.* His range of motion of the lumbar spine was markedly limited, and Plaintiff was found to be in much distress and had much difficulty moving from the chair to the examination table. *Id.* Side bending and lateral rotation were painful and moderately limited. *Id.* Straight leg raising was positive bilaterally and more pronounced from the right side. *Id.* The right lower lumbar paravertebral muscles were tight and tender. *Id.* However, the neurological exam showed no impairment of muscle strength in the lower extremities. *Id.* Dr. Vidyasagar diagnosed Plaintiff with post-traumatic low back pain and lumbar radiculopathy on the right. *Id.* Dr. Vidyasagar recommended that Plaintiff continue his regimen of physical therapy and found that Plaintiff was currently unable to work due to his disabling symptoms. *Id.*

173.

In connection with Plaintiff's claim for worker's compensation, Dr. Naunihal Singh performed an independent neurological evaluation of Plaintiff on October 29, 2002. Dr. Singh reported that Plaintiff had a shuffling gait and was using a walker to ambulate, but he was able to get on and off of the examining table unassisted. *Id.* 166. He said that Plaintiff complained of daily headaches and right-sided low back pain. *Id.* Dr. Singh found no tenderness of the cervical spine and a full range of motion in all directions. *Id.* 167. He found no tenderness of the thoracic spine. *Id.* There was no tenderness of the lumbar spine, with a full range of motion in all directions. *Id.* 168. Flexion, extension, abduction, adduction, and internal and external rotation of the shoulders were all full. *Id.* Supine straight leg raising was possible to only 60 degrees on the right and 90 degrees on the left. *Id.* Sitting straight leg raising was possible to only 70 degrees on the right and 90 degrees on the left. *Id.* Muscle tone was normal in all four extremities. *Id.* Muscle strength was 5/5 in all extremities. *Id.* Sensation was diminished on the right leg. *Id.* Plaintiff could not walk tandem, nor could he walk on his toes and heels. *Id.*

Dr. Singh diagnosed Plaintiff with lumbosacral spine sprain and sensory loss on the right up to T8 that was unexplainable. *Id.* 169. Based on his examination, he found that Plaintiff had a mild disability. *Id.* He noted that Plaintiff's job involved driving heavy industrial equipment and that Plaintiff could return to work on light duty and should avoid bending and lifting. *Id.*

Plaintiff's treatment continued, with a minor set-back when he slipped on ice and fell in February 2003, *id.* 136, and the range of motion in his spine and hips, as well as the muscle strength in his lower extremities, continued to improve. *Id.* 184-227 (over time, test results showed normal to minimally reduced ranges of motion in spine and hips). By July 2003, when

5

he applied for disability insurance benefits, Plaintiff reported to Dr. Jerry Lovelace of S.V. Medical that his back was improving quite a bit. *Id.* 133. The severity of Plaintiff's pain was 3-4/10, and it continued to be exacerbated by bending. *Id.* Plaintiff reported that his symptoms were primarily on the right side and that his left ankle was improved and exacerbated purely by walking. *Id.* Dr. Lovelace noted that Plaintiff was totally disabled and stated that Plaintiff's functional limitations included lifting, bending, carrying, walking continuously, and sitting continuously. *Id.*

Upon physical examination, Dr. Lovelace noted that Plaintiff was in no distress. *Id.* He ambulated with a cane and his gait was antalgic. *Id.* The lumbar spine was tender diffusely over the right lumbar paraspinal muscles. *Id.* Straight leg raising was positive bilaterally. *Id.* Flexion of the trunk was approximately 100 degrees and associated with pain, and extension was full and associated with pain. *Id.* The left ankle was tender focally near the lateral malleolus. *Id.* Range of motion of the left ankle was full, and there was pain with inversion of the foot. *Id.* Dr. Lovelace concluded that Plaintiff suffered from post-traumatic lumbar paravertebral muscle spasm and myalgia, as well as left ankle dysfunction, both of which continued to improve. *Id.* Plaintiff was advised to continue with physical therapy three times a week, as well as taking Neurontin and using an ankle support. *Id.*

As of January 6, 2004, Dr. Mitamura reported that Plaintiff had a continued complaint of low back pain, but that his leg pain had diminished. *Id.* 255. He noted that Plaintiff had increased strength in his legs and low back, however, he still had left knee pain. *Id.* Plaintiff now walked part of the time without the use of a cane or assistive device, however, the left leg pain had worsened. *Id.* Physical examination showed mild tenderness of the lumbar spine with

paravertebral muscle spasm. *Id.* Plaintiff ambulated without asymmetry in gait. *Id.* There was moderate pain on extension and rotation of the lumbar spine, and marked tenderness at the right greater trochanter. *Id.* There was atrophy of the left calf, and tenderness at the left knee joint line. *Id.* Dr. Mitamura concluded that Plaintiff had spinal instability with lumbar radiculopathy and possible internal derangement of the left knee. *Id.* He recommended that Plaintiff get a series of three spinal facet injections and a spine brace and that Plaintiff continue to use a cane. *Id.* He also recommended that Plaintiff get an MRI of his left knee. *Id.*

On May 21, 2004, Dr. Lovelace completed a Multiple Impairment Questionnaire. *Id.* 230-36. In terms of Plaintiff's residual functional capacity, he gave no response to the question of how many hours in an eight-hour day Plaintiff could sit or stand/walk. *Id.* 232. He noted that Plaintiff could not sit continuously in a work setting, but that he would have to get up and move around every 20 minutes and could sit down again after a 5-minute period. *Id.* Dr. Lovelace also responded that Plaintiff could not stand or walk continuously in a work setting. *Id.* 233. He noted that Plaintiff could frequently lift and carry up to 5 pounds and occasionally lift and carry 5-10 pounds. *Id.* He responded that Plaintiff did not have significant limitations in doing repetitive reaching, handling, fingering or lifting. *Id.* Plaintiff had no limitations in his upper extremities with respect to grasping, turning, or twisting objects, using his fingers/hands for fine manipulations, or using his arms for reaching (including overhead). *Id.* 233-34. Dr. Lovelace noted that Plaintiff's symptoms would increase if he were placed in a competitive work environment. *Id.* 234. He noted that Plaintiff's condition did not interfere with the ability to keep his neck in a constant position (*e.g.*, looking at a computer screen, looking down at a desk). *Id.* He responded that Plaintiff's experience of pain, fatigue, or other symptoms was frequently

7

severe enough to interfere with attention and concentration and that Plaintiff's impairments would last at least 12 months. *Id.* 234-35. Dr. Lovelace responded that Plaintiff would need to take unscheduled breaks to rest at unpredictable intervals during an 8-hour workday every 20-30 minutes and that Plaintiff would need to rest for 5 minutes before returning to work. *Id.* 235. He responded that Plaintiff was likely to be absent from work more than 3 times a month. *Id.* Lastly, Dr. Lovelace noted that Plaintiff could not do any pushing, pulling, kneeling, bending, or stooping. *Id.* 236.

On May 27, 2004, Dr. Lovelace examined Plaintiff and noted that Plaintiff's symptoms remained unchanged and that he felt better after taking his pain medications. *Id.* 273. Plaintiff was in mild distress secondary to pain, and his gait was antalgic. *Id.* Plaintiff's lumbar spine was tender diffusely, and there were spasms bilaterally. *Id.* Straight leg raising was positive bilaterally. *Id.* The left knee was tender medially. *Id.* Dr. Lovelace assessed Plaintiff as having post-traumatic paravertebral muscle spasm and myalgia, probable piriformis syndrome, a left knee sprain, sensory loss of the left leg to T12, and sacroilitis. *Id.* He found that Plaintiff had a marked partial disability. *Id.* 274. Thereafter, Dr. Lovelace continued to see Plaintiff on an almost monthly basis throughout 2004, with essentially the same findings at each physical examination. *Id.* 276-86.

By June 23, 2004, Dr. Mitamura reported that Plaintiff was able to walk without a cane. *Id.* 245. He noted that Plaintiff complained of low back pain with radiation to the right leg which had improved. *Id.* He noted that Plaintiff continued to have left knee pain which worsened with the use of stairs. *Id.* Physical examination showed that Plaintiff had mild tenderness of the lumbar spine with paravertebral muscle spasm. *Id.* Plaintiff ambulated without

asymmetry in gait. *Id.* Marked tenderness was noted at the left knee joint line with an effusion. *Id.* Dr. Mitamura opined that Plaintiff had spinal instability with lumbar radiculopathy and internal derangement of the left knee. *Id.* He recommended an MRI of Plaintiff's left knee and probable arthroscopy of that knee. *Id.* He concluded that Plaintiff continued to be totally disabled from work. *Id.* Thereafter, Dr. Mitamura continued to see Plaintiff on an almost monthly basis, with essentially the same findings at each physical examination. *Id.* 237-44, 268-72. However, while on September 7, 2004, Dr. Mitamura stated that Plaintiff was almost ready for light duty, *id.* 239, on September 22, 2004, he noted that Plaintiff had a significant worsening in his left knee pain and needed to hold off on returning to work until this could be evaluated. *Id.* 237. On March 31, 2005 and May 3, 2005, Dr. Mitamura additionally reported that Plaintiff was experiencing buckling to the left knee with pain and swelling and that he had a left antalgic gait. *Id.* 297-98, 300. In his May 3, 2005 physical examination, Dr. Mitamura noted marked left leg atrophy. *Id.* 297. He reported that Plaintiff had significant lumbar radiculopathy with nerve entrapment and would require surgical intervention, and that although Plaintiff had previously declined such intervention, Plaintiff was now seeing that it might be his only hope. *Id.*

In 2005, Dr. Lovelace saw Plaintiff in March, April, and May and reported essentially the same findings at each visit. *Id.* 287-89, 301-02. On May 12, 2005, Plaintiff was in mild distress secondary to pain and had an antalgic gait. *Id.* 301. Plaintiff's lumbar spine was tender bilaterally over the lumbar paraspinal muscles and worse on the left. *Id.* Plaintiff had no spasms and his paraspinal muscles were hypertonic. *Id.* Plaintiff had atrophy of his left calf muscles. *Id.* All motion, both lumbar and knee, was with pain. *Id.* Plaintiff was diagnosed with post-traumatic lumbar paravertebral muscle spasm and myalgia, piriformis syndrome, left knee strain

and internal derangement, sensory loss on the left to T12, possible lumbosacral radiculopathy, and atrophy of the left calf muscles. *Id.* 302. Dr. Lovelace concluded that Plaintiff was totally disabled. *Id.*

### C. Other Evidence

Plaintiff testified at the hearing that he was born in 1970 and had a 12th grade education in Ghana. *Id.* 305, 307, 313. He was working as a tractor-trailer truck driver when he was injured in July 2002 after falling off the top of his truck. *Id.* 312-14. Plaintiff testified that he had pain in his back and knees. *Id.* 320-24. He said that most of his pain was in his lower back and that he especially felt pain upon waking up in the morning. *Id.* 320. He had more pain when he bent down to put his shoes on. *Id.* 320-21. Plaintiff testified that he had trouble sleeping because sometimes the pain would wake him up in the middle of the night. *Id.* 307-08. He also testified that he had problems walking and could walk almost two blocks, but then would feel tired and weak in his legs and have to stand for a while before moving on. *Id.* 308. Plaintiff testified that he wore a back brace four or five days a week. *Id.* 320. Plaintiff said that the pain medication he was taking helped to ease his pain but did not make it disappear completely. *Id.* 324. He testified that while his doctors recommended knee surgery, he did not get approval for it. *Id.* 317-18. In addition, while his doctors also recommended back surgery, he was fearful of having that surgery. *Id.* 319.

Plaintiff testified that his wife did all of the cooking, food shopping, housework, and laundry. *Id.* 308. His wife drove him to the hearing. *Id.* 306. Plaintiff had not driven since the accident. *Id.* Plaintiff's wife took him to physical therapy three mornings a week. *Id.* 310-11.

In the afternoons, he would usually lay down in his chair since he would get sore from sitting for too long. *Id.* 311.

## II. APPLICABLE LEGAL PRINCIPLES

### A. Standard of Review

The scope of review in an appeal from a social security disability determination involves two levels of inquiry. First, the court must review the Commissioner's decision to determine whether the Commissioner applied the correct legal standard when determining that the plaintiff was not disabled. *See Tejada v. Apfel,* 167 F.3d 770, 773 (2d Cir. 1999). Failure to apply the correct legal standard is grounds for reversal of the ruling. *See Townley v. Heckler,* 748 F.2d 109, 112 (2d Cir. 1984). Second, the court must decide whether the Commissioner's decision was supported by substantial evidence. *See Green-Younger v. Barnhart,* 335 F.3d 99, 105-06 (2d Cir. 2003). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. at 106 (internal quotation marks and citations omitted). When determining whether substantial evidence supports the Commissioner's decision, it is important that the court "carefully consider[] the whole record, examining evidence from both sides." *Tejada,* 167 F.3d at 774 (citing *Quinones v. Chater,* 117 F.3d 29, 33 (2d Cir. 1997)). "It is not the function of a reviewing court to decide *de novo* whether a claimant was disabled." *Melville v. Apfel,* 198 F.3d 45, 52 (2d Cir. 1999) (citation omitted). If the "decision rests on adequate findings supported by evidence having rational probative force, [this Court] will not substitute [its own] judgment for that of the Commissioner." *Veino v. Barnhart,* 312 F.3d 578, 586 (2d Cir. 2002). Moreover, the ALJ "has an obligation to develop the record in light of the non-adversarial nature of the benefits proceedings, regardless of whether the claimant

11

is represented by counsel." *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000) (citations omitted).

B.     **Determining Disability**

The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In evaluating a disability claim, regulations issued pursuant to the Social Security Act set forth a five-step process that the Commissioner must follow. *See* 20 C.F.R. § 404.1520(a)(4).

First, the Commissioner will consider whether the claimant is working in "substantial gainful activity." *Id*. at § 404.1520(a)(4)(i),(b). If the claimant is engaged in "substantial gainful activity," then the Commissioner will find that the claimant is not disabled. *Id.* Second, the Commissioner considers the medical severity of the claimant's impairments. *Id*. at § 404.1520(a)(4)(ii). The claimant's impairment will not be deemed severe "[i]f [he] do[es] not have any impairment or combination of impairments which significantly limits [his] physical or mental ability to do basic work activities." *Id*. at § 404.1520(c). Third, if it is found that the claimant's impairments are severe, the Commissioner will determine if the claimant has an impairment that meets or equals one of the impairments presumed severe enough to render one disabled, listed in Appendix 1 to Part 404, Subpart P of the Social Security Regulations. *See id*. at § 404.1520(a)(4)(iii),(d). If the claimant's impairments are not on the list, the Commissioner considers all the relevant medical and other evidence and decides the claimant's residual functional capacity. *See id.* at § 404.1520(e). Then, the Commissioner proceeds to the fourth

step to determine whether the claimant can do his past relevant work. *See id*. at § 404.1520(a)(4)(iv),(e)-(f). Finally, if it is found that the claimant cannot do his past relevant work, the Commissioner will consider the claimant's residual functional capacity, age, education, and work experience to see if he can make an adjustment to other work. *See id*. at § 404.1520(a)(4)(v),(g).

The claimant bears the burden of proof on the first four steps of this analysis. *See DeChirico v. Callahan*, 134 F.3d 1177, 1180 (2d Cir. 1998) (citation omitted). If the ALJ concludes at an early step of the analysis that the claimant is not disabled, he need not proceed with the remaining steps. *See Williams v. Apfel*, 204 F.3d 48, 49 (2d Cir. 2000). If the fifth step is necessary, the burden shifts to the Commissioner to show that the claimant is capable of other work. *See DeChirico*, 134 F.3d at 1180 (citation omitted).

### III. <u>DISCUSSION</u>

In deciding Plaintiff's case, the ALJ correctly applied the five-step sequential analysis set forth in the regulations. First, he found that Plaintiff had not engaged in any substantial gainful activity since the alleged onset date of his disability, *i.e.*, July 19, 2002. AR 12. Second, he found that Plaintiff suffered from a "severe" impairment: "post-traumatic lumbar para vertebral muscle spasm and myalgia and left knee strain." *Id.* 14. Third, the ALJ analyzed whether Plaintiff's impairments met or equaled the medical criteria of any of the impairments listed in Appendix 1 to Subpart P of Part 404 of the Social Security Regulations and found that they did not. *Id.*

Having found that Plaintiff's impairments did not meet or equal the medical criteria of any of the listed impairments, the ALJ went on to determine Plaintiff's residual functional

capacity and concluded that Plaintiff's residual functional capacity would allow him to perform sedentary exertional activities. *Id.* 15. He found that Plaintiff was capable of lifting and carrying 10 pounds on an occasional and frequent basis, sitting for 6 hours, and standing and walking for 2 hours. *Id.* Furthermore, he found that Plaintiff had to alternate between sitting and standing. *Id.*

Based on this assessment of Plaintiff's residual functional capacity, the ALJ proceeded to the fourth step in the analysis to determine whether Plaintiff could perform his past relevant work as a truck driver and found that he could not. *Id.* 16 ("The vocational expert testified the claimant [sic] past work required the performance of heavy, semi-skilled work. Because the claimant is capable of performing sedentary work, the claimant is unable to perform past relevant work."). Therefore, the ALJ proceeded to the fifth step in the evaluation, *i.e.*, a showing by the Social Security Administration that "there are other jobs existing in significant numbers in the national economy that the claimant can perform, consistent with the claimant's medically determinable impairment(s), functional limitations, age, education and work experience." *Id.* Based on the testimony of the vocational expert, the ALJ concluded that Plaintiff could perform the requirements of the job of surveillance systems monitor. *Id.* 16-17. Therefore, as per 20 C.F.R. § 404.1520(g), Plaintiff had not been under a "disability" at any time through the date of the ALJ's decision. *Id.* 17.

The only apparent dispute between the parties is with regard to the fifth step in the sequential analysis. The sole argument presented by Plaintiff in his cross-motion for judgment on the pleadings is that the Commissioner failed to carry her burden of showing that he could perform other work available in the local or regional economy. Plaintiff asserts that either

judgment should be entered in his favor, or the case should be remanded for further development of the record on the issue of his ability to adjust to other work.

"In the ordinary case, the Commissioner meets his burden at the fifth step by resorting to the applicable medical vocational guidelines (the grids), 20 C.F.R. Pt. 404, Subpt. P, App. 2 (1986). The grids take[] into account the claimant's residual functional capacity in conjunction with the claimant's age, education and work experience." *Rosa v. Callahan*, 168 F.3d 72, 78 (2d Cir. 1999) (internal quotation marks and citations omitted). "Although the grid results are generally dispositive, exclusive reliance on the grids is inappropriate where the guidelines fail to describe the full extent of a claimant's physical limitations." *Id.* In deciding whether a person's "work skills can be used in other work and the specific occupations in which they can be used, . . . [the Commissioner] may use the services of a vocational expert[.]" 20 C.F.R. § 404.1566(e). Because in this case the ALJ determined that Plaintiff had additional limitations that prevented him from performing the full range of sedentary work, *see* AR 17 ("If the claimant had the residual functional capacity to perform the full range of sedentary work, a finding of 'not disabled' would be directed by Medical-Vocational Rule 201.29. However, the claimant's ability to perform all or substantially all of the requirements of this level work has been impeded by additional limitations."), he retained a vocational expert to testify about the extent to which these limitations eroded the sedentary occupational base. *Id.*

At the hearing, the ALJ presented the vocational expert with the following hypothetical:

> [Assuming the person in question is] 35 and has a twelfth grade education from West Africa and further we have a person who is unskilled except for the ability to drive. Assume further this person would be limited to lifting 10 pounds. Let's assume that this person could carry dockets and small tools. Let's assume that this person could only stand or walk occasionally during an eight-

> hour day. Let's assume further that this person would have to have the type of position which he or she would be allowed to alternate between sitting and standing during a work day.

*Id.* 326. Based on these criteria, the vocational expert concluded that Plaintiff could perform the job of surveillance systems monitor, *Dictionary of Occupational Titles* ("DOT") code 379.367-010, which requires a sedentary physical demand and is unskilled. *Id.* He testified that there were 16,370 of these jobs in the national economy and 1,225 in the region. *Id.* The vocational expert did not know what twelve years of education in Ghana would be equivalent to in the United States. *Id.* 327. He testified that if it were equivalent to a high school diploma, then there would be other jobs that Plaintiff could perform; otherwise, his testimony would remain the same. *Id.* The vocational expert testified that his statements were consonant with the provisions of the DOT. *Id.*

Relying on the vocational expert's testimony on cross-examination, Plaintiff contends that the Commissioner failed to sustain her burden of showing by substantial evidence that Plaintiff could perform the job of surveillance systems monitor. On cross-examination, the vocational expert testified that if Plaintiff was not able to sit more than two hours nor stand or walk more than two hours in a workday, he could not be a surveillance systems monitor, since the workday is normally eight hours. *Id.* 327-28. The vocational expert further testified that if a person needed to be able to take naps during the workday, then he would not be able to perform this type of job. *Id.* 328.

Plaintiff cites solely to his own testimony in support of his argument that he suffered such limitations. Yet the Multiple Impairment Questionnaire completed by Dr. Lovelace, one of Plaintiff's treating physicians, did not indicate a total number of hours that Plaintiff could either

sit or stand/walk in an eight-hour workday. *See id.* 232. The questionnaire noted only that Plaintiff needed to get up and move around for 5 minutes after every 20 minutes of sitting, *id.*, which is consistent with the ALJ's finding that in an eight-hour workday, Plaintiff could sit for 6 hours, and stand and walk for 2 hours, with alternating between sitting and standing. Furthermore, neither the Multiple Impairment Questionnaire nor any other medical record stated that Plaintiff required daily naps.

"It is the function of the [Commissioner], not [the reviewing courts], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Aponte v. Sec'y, Dep't of Health & Human Servs.*, 728 F.2d 588, 591 (2d Cir. 1984) (internal quotation marks and citation omitted). The Commissioner satisfies her burden of showing the existence of alternative substantial gainful employment suited to Plaintiff's physical and vocational capabilities where, as here, there is substantial record evidence to support the assumptions upon which the vocational expert based his opinion. *See Dumas v. Schweiker*, 712 F.2d 1545, 1553-54 (2d Cir. 1983). Based upon a review of the entire record, as summarized in detail in Sections I.B. and I.C., *supra*, as well as in the ALJ's Decision, *see* AR 15-16, there is substantial evidence supporting the ALJ's finding regarding Plaintiff's residual functional capacity, *i.e.*, that Plaintiff could lift and carry 10 pounds, sit 6 hours, and stand and walk 2 hours, with alternating between sitting and standing. Therefore, the ALJ could rely on the vocational expert's opinion that Plaintiff was capable of performing the job of surveillance systems monitor. Contrary to Plaintiff's assertion, the ALJ was not obligated to rely on the vocational expert's cross-examination testimony where substantial evidence supported the ALJ's

conclusion that Plaintiff did not suffer from those particular limitations. *See*, *e.g.*, *Dumas*, 712 F.2d at 1554 n.4.

Plaintiff also argues that while the ALJ found that Plaintiff had a marginal education under 20 C.F.R. § 404.1564, meaning 6th grade level or less, the vocational expert testified that the job of surveillance systems monitor required a 7th grade education. However, the vocational expert testified that if a 12th grade education from Ghana was equivalent to a 6th grade education in the United States, then Plaintiff would still be able to perform the job of surveillance systems monitor. AR 327. In response to the question of whether the job required at least a 7th grade education, he stated, "The job description and requirements are an [aggregate], they're an average, so it's approximately a seventh grade education." *Id.* In sum, the ALJ's finding that Plaintiff had the level of education necessary for the job of surveillance systems monitor is supported by substantial evidence.

Plaintiff argues, in the alternative, that the case should be remanded to develop the record further on the issues of (1) educational equivalency, *i.e.*, what a 12th grade education in Ghana corresponds to in the United States, and (2) the nature of the job of surveillance systems monitor. However, Plaintiff provides no legal basis for his request. The vocational expert testified that while he did not know what a 12th grade education in Ghana was equivalent to in this country, the job of surveillance systems monitor, an unskilled job, could be performed by someone with a 6th grade, *i.e.*, marginal, education. *Id.* 326-27; *see also* 20 C.F.R. § 404.1564(b)(2) ("Marginal education means ability in reasoning, arithmetic, and language skills which are needed to do simple, unskilled types of jobs."). Notably, Plaintiff had a level of education sufficient to perform his past job as a truck driver, which was semi-skilled. *See* AR 325. With respect to the

18

duties and physical demands of the job of surveillance systems monitor, they may be found in the DOT under code number 379.367-010. The vocational expert testified that his statements were consistent with the DOT's provisions, *id.* 327, which testimony the ALJ credited. *See id.* 17 ("The Administrative Law Judge finds this testimony credible and that the evidence is consistent with that found in the DOT."). Plaintiff has failed to demonstrate any need for further development of the record, and the request for a remand should be denied.

## CONCLUSION

For the foregoing reasons, I respectfully recommend that your Honor grant the Commissioner's motion, deny Plaintiff's cross-motion, and dismiss the case.

## NOTICE

Pursuant to 28 U.S.C. § 636(b)(1), as amended, and Rule 72(b), Fed. R. Civ .P., the parties shall have ten (10) days, plus an additional three (3) days, pursuant to Rule 6(e), Fed. R. Civ. P., or a total of thirteen (13) working days, (*see* Rule 6(a), Fed. R. Civ. P.), from the date hereof, to file written objections to this Report and Recommendation. Such objections, if any, shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of The Honorable Kenneth M. Karas, at the United States Courthouse, 300 Quarropas Street**,** Room 533, White Plains, New York 10601, and to the chambers of the undersigned at Room 434, 300 Quarropas Street, White Plains, New York 10601.

Failure to file timely objections to the Report and Recommendation will preclude later appellate review of any order to judgment that will be entered by Judge Karas. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Frank v. Johnson*, 968 F.2d 298 (2d Cir.), *cert. denied*, 113 S. Ct. 825

(1992); *Small v. Secretary of H.H.S.*, 892 F.2d 15, 16 (2d Cir. 1989) (*per curiam*); *Wesolek v. Canadair, Ltd.*, 838 F.2d 55, 58 (2d Cir. 1988). Requests for extensions of time to file objections must be made to Judge Karas and should not be made to the undersigned.

Date: November 27 2007
White Plains, New York

Respectfully submitted,

_____
MARK D. FOX
UNITED STATES MAGISTRATE JUDGE

Copies of the foregoing report and recommendation have been sent to the following:

The Honorable Kenneth M. Karas, U.S.D.J.

Joseph P. Kirley, Esq.
149 Grand Street
White Plains, New York 10601

Leslie A. Ramirez-Fisher, Esq.
United States Attorney's Office
Southern District of New York
86 Chambers Street
New York, New York 10007