UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

MAXWELL OWUSU,

                     Plaintiff,

     -v-

MICHAEL J. ASTRUE,
Commissioner of Social Security,[1]

                   Defendant.

No. 05-CV-10267 (KMK)(MDF)

<u>ORDER ADOPTING REPORT &
RECOMMENDATION</u>

---

KENNETH M. KARAS, District Judge:

     Plaintiff Maxwell Owusu ("Plaintiff") brings this action against the Commissioner of

Social Security ("Commissioner") pursuant to 42 U.S.C. § 405(g), seeking review of the decision

of an administrative law judge ("ALJ") to deny Plaintiff's application for disability insurance

benefits.  The Commissioner moves for judgment on the pleadings pursuant to Federal Rule of

Civil Procedure 12(c), and Plaintiff cross-moves for the same.  Judge Colleen McMahon, to

whom this case was originally assigned, referred the motions to Magistrate Judge Mark D. Fox,

who issued a Report and Recommendation ("R&R") concluding that judgment should be granted

for the Commissioner and the case dismissed.[2]  Plaintiff filed objections ("Obj.") to the R&R,

which the Court considers here.[3]

---

     [1] Pursuant to Federal Rule of Civil Procedure 25(d)(1), Michael J. Astrue is substituted
for his predecessor, Jo Anne B. Barnhart, as Commissioner of Social Security.

     [2] The case was reassigned to this Court on August 6, 2007.

     [3] On December 20, 2007, Plaintiff requested the Court to extend the time for Plaintiff to
submit his Objections to the R&R to December 31, 2007 (Dkt. No. 20.).  In the same December
20, 2007 letter, Plaintiff (1) objected to Magistrate Judge Fox's recommendation to uphold the

I.  Discussion

A.  Standard of Review

A district court reviewing a report and recommendation addressing a dispositive motion "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1); *see also Donahue v. Global Home Loans & Fin., Inc.*, No. 05-CV-8362, 2007 WL 831816, at *1 (S.D.N.Y. Mar. 15, 2007).  Under 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b), parties may submit objections to the magistrate judge's report and recommendation.  The objections must be "specific" and "written," Fed. R. Civ. P. 72(b)(2), and must be made "[w]ithin 10 days after being served with a copy of the recommended disposition," *id.*; *see also* 28 U.S.C. § 636(b)(1).

Where a party submits timely objections to a report and recommendation, the district court reviews de novo the parts of the report and recommendation to which the party objected. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3); *Donahue*, 2007 WL 831816, at *1.  The district court "may adopt those portions of the . . . report [and recommendation] to which no 'specific written objection' is made, as long as the factual and legal bases supporting the findings and conclusions set forth in those sections are not clearly erroneous or contrary to law." *Eisenberg v. New England Motor Freight, Inc.*, 564 F. Supp. 2d 224, 226 (S.D.N.Y. 2008) (quoting Fed. R. Civ. P. 72(b)(2)).

---

ALJ's finding that Plaintiff could work as a surveillance systems monitor and was therefore not disabled, and (2) requested that the Court remand the case for further development of the record. (*Id.*)  On the Government's consent, the Court accepted Plaintiff's late filing of Objections to the R&R.  (*Id.*)  Because Plaintiff did not file any further Objections following the December 20, 2007 letter, the Court will construe Plaintiff's December 20, 2007 letter brief as his submission of Objections to the R&R.  On January 11, 2008, the Commissioner filed a response to Plaintiff's Objections.  (Dkt. No. 21.)

Here, Plaintiff has objected to Magistrate Judge Fox's conclusion that the ALJ's determination was supported by substantial evidence and properly applied the law, and also objected to Magistrate Judge Fox's denial of Plaintiff's request to remand the case to further develop the record.  Thus, the Court reviews de novo the issues specifically raised in the objections, while examining for clear error only the remainder of the R&R.  *See Wilds v. United Parcel Serv., Inc.*, 262 F. Supp. 2d 163, 169-70 (S.D.N.Y. 2003) (citing 28 U.S.C. §636(b)).

When a claimant seeks review of a Social Security hearing regarding disability benefits, the court's function is not to determine whether the appellant is disabled.  *See Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) ("[I]t is not our function to determine *de novo* whether [plaintiff] is disabled." (internal quotation marks omitted) (second alteration in original)); *Riordan v. Barnhart*, No. 06-CV-4773, 2007 WL 1406649, at *4 (S.D.N.Y. May 8, 2007) (same); *Van Dien v. Barnhart*, No. 04-CV-7259, 2006 WL 785281, at *8 (S.D.N.Y. Mar. 24, 2006) ("The court is not permitted to determine whether the claimant is disabled *de novo*."). Rather, the Court determines only "whether the correct legal standards were applied and whether substantial evidence supports the decision."  *Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004); *see also Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (noting that a court will only overturn an ALJ's determination if it is "based upon legal error" or "not supported by substantial evidence" (internal quotation marks omitted)); *Morel v. Massanari*, No. 01-CV-186, 2001 WL 776950, at *5 (S.D.N.Y. July 11, 2001) ("[T]he role of the district court is quite limited and substantial deference is to be afforded the Commissioner's decision." (internal quotation marks omitted)).  The Supreme Court has defined "substantial evidence" as "more than a mere scintilla . . . [and] such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks omitted); *accord Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002) ("Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." (internal quotation marks omitted)).

"To be 'disabled' . . . and therefore entitled to benefits, a claimant must demonstrate an 'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" *Rosa*, 168 F.3d at 77 (quoting 42 U.S.C. § 423(d)(1)(A)). "Furthermore, an individual's impairment must be 'of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.'" *Id.* (quoting 42 U.S.C. § 423(d)(2)(A)). To determine whether a claimant is entitled to disability benefits, the ALJ must follow the familiar five-step sequential analysis. *See* 20 C.F.R. § 404.1520(a)(1); *Williams v. Apfel*, 204 F.3d 48, 49 (2d Cir. 1999). The ALJ initially must determine whether the claimant is currently engaged in substantial gainful work. *See* 20 C.F.R. § 404.1520(a)(4)(i); *id.* § 404.1520(b); *Peterson v. Barnhart*, 219 F. Supp. 2d 491, 493 (S.D.N.Y. 2002). If the claimant is not so engaged, the ALJ considers whether the claimant has a severe impairment that limits the claimant's ability to participate in work-related activities. *See* 20 C.F.R. § 404.1520(a)(4)(ii); *id.* § 404.1520(c); *Williams*, 204 F.3d at 49. If so, the ALJ determines whether the impairment is listed in 20 C.F.R. § 404.1520, Part 404, Subpart P, Appendix 1, and, if it is, disability is presumed, and the claimant is considered unable to perform substantial gainful activity. *See* 20 C.F.R. § 404.1520(a)(4)(iii);

*id.* § 404.1520(d).  If the impairment does not meet or equal the criteria of a listed impairment, the ALJ must determine whether the claimant retains functional capacity to perform her past work.  *See* 20 C.F.R. § 404.1520(a)(4)(iv); *id.* § 404.1520(e).  Where a claimant is thereafter deemed unable to perform the claimant's past work, the ALJ proceeds to the fifth step, which "requires the [ALJ] to determine whether there is other work within the national economy that the [claimant] is qualified to perform."  *Peterson*, 219 F. Supp. 2d at 493; *see also* 20 C.F.R. § 404.1520(a)(4)(v); *id.* § 404.1520(f)-(g) (noting that ALJ must show that there are other jobs existing based on the claimant's vocational factors, which include age, education, and work experience, as well as the claimant's residual functional capacity).  If so, then the ALJ will determine that the individual is not disabled.  *See* 20 C.F.R. § 404.1520(a)(4)(v) ("If you can make an adjustment to other work, we will find that you are not disabled.  If you cannot make an adjustment to other work, we will find that you are disabled.").  The claimant has the burden of proof for the first four steps, but the burden rests with the Commissioner as to the fifth step – the determination on alternative work.  *See Peterson*, 219 F. Supp. 2d at 493; *see also Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987) (noting that Commissioner is required to bear burden of proof at step five "only if the sequential evaluation process proceeds to the fifth step"; for instance, "[i]f the process ends at step two, the burden of proof never shifts").

    B.  Analysis

        The Court adopts the thorough recitation of facts set forth by Magistrate Judge Fox (R&R 1-11) and assumes the Parties' familiarity with the R&R, repeating only those facts relevant to

the narrow objections raised by Plaintiff.[4]

In his cross-motion for judgment on the pleadings, Plaintiff argues that the ALJ did not meet his burden of proving that Plaintiff could perform other jobs in the national economy in the fifth step of his analysis to determine whether Plaintiff was entitled to disability benefits. Reaching the fifth step, the ALJ considered the opinions of a vocational expert, the treating physicians and consulting physicians, the other medical evidence, and Plaintiff's testimony. (Government's Administrative Record ("AR") 11-17.)  The ALJ relied substantially on the reports of Dr. Jerry Lovelace[5] and the report and testimony of the vocational expert and determined that Plaintiff could obtain work as a surveillance systems monitor.  (*Id.*)

Plaintiff's Objections to the R&R rehash his argument that the ALJ's fifth-step determination, wherein the burden of proof rested with the ALJ, was not supported by the evidence.  (Obj. 1)  First, Plaintiff argues that the vocational expert testified that Plaintiff could not perform the job of surveillance systems monitor if Plaintiff could not sit for more than two hours and took naps every day, and therefore that the ALJ should have found that Plaintiff could not perform this job as a result of this testimony.  (*Id.*)  Second, Plaintiff argues that the ALJ did not properly credit Plaintiff's testimony, which Plaintiff characterizes as stating that he needed to nap during the day.  (*Id.*)  Plaintiff acknowledges that the medical records do not indicate that

---

[4] Plaintiff originally applied for disability benefits on July 15, 2003, and his application was denied by an ALJ on July 22, 2005, after a hearing held on May 17, 2005.  Plaintiff's request for review of the ALJ decision was subsequently denied on October 14, 2005.  Plaintiff filed his Complaint in this action on December 7, 2005.

[5] Dr. Lovelace, a general practitioner, became Plaintiff's treating physician in 2003 (AR 134, 236), and in May 2004, he completed a "multiple impairment questionnaire" concerning Plaintiff (*id.* 230).

Plaintiff could not sit for more than two hours or that Plaintiff would need to take naps during the day.  (*Id.*)  However, Plaintiff argues that common sense would dictate that if Plaintiff has to stand up every twenty minutes or so, he must not be able to sit for more than two hours in a work day.  (*Id.*)  Further, Plaintiff argues that his testimony should be credited with respect to his need to take naps because this is information the ALJ should have elicited but did not.  (*Id.*)  Therefore, Plaintiff argues that the ALJ erred in determining that Plaintiff could perform the job of a surveillance systems monitor.

With regard to Plaintiff's first objection, in a Multiple Impairment Questionnaire that Dr. Lovelace completed in relation to Plaintiff's disability benefits claim, he stated that it would be necessary or medically recommended for Plaintiff not to sit continuously in a work setting.  (AR 232.)  Dr. Lovelace specifically indicated that, if Plaintiff were sitting, he would have to get up and move around every twenty minutes throughout the day, and that Plaintiff would have to wait five minutes before he could sit again.  (*Id.*)  In addition, Dr. Lovelace stated that Plaintiff would sometimes need to take unscheduled breaks at unpredictable intervals during an eight-hour work day.  (*Id.* 235.)  However, Dr. Lovelace did not place any limitation on the total number of hours that Plaintiff could sit or stand in a five-day work week.  (*Id.* 232.)

At the May 17, 2005 hearing before the ALJ, Plaintiff and a vocational expert both testified.  Plaintiff testified that the medications he was taking made him tired.  (*Id.* 308, 321.)  Plaintiff also testified that he "sleep[s] more in the daytime" (*id.* 310) and that he "lay[s] down in his chair in the afternoon"[6] (*id.* 311).  Plaintiff did not, however, testify that he needed to nap

---

[6] Also in the administrative record is a chronic low back pain disability questionnaire, wherein Plaintiff claimed that three to four days a week he gets tired for no reason.  (AR 163.)  However, Plaintiff did not state that he needs to nap during the day in this questionnaire either.

during the day, and his own counsel, who asked Plaintiff questions, elicited no such testimony.

At the hearing, the ALJ asked the vocational expert to consider the following hypothetical:

> Assuming we have a person that was born in 1970, who this year will be 35 . . . . and has a twelfth grade education from West Africa and further we have a person who is unskilled except for the ability to drive. Assume further this person would be limited to lifting 10 pounds. Let's assume that this person could carry dockets and small tools. Let's assume that this person could only stand or walk occasionally during an eight-hour day. Let's assume further that this person would have to have the type of position which he or she would be allowed to alternate between sitting and standing during a work day. Would those limitations in your opinion [allow this person to] perform work that exists in significant numbers in several regions of the country?

(*Id.* 326.) In response, the vocational expert testified that, with those limitations, Plaintiff could perform as a surveillance systems monitor, DOT code 379.367-010. (*Id.*) The vocational expert explained that the job requires a sedentary physical demand and is an unskilled position. (*Id.*) The vocational expert noted that there are 16,730 of these jobs in the national economy, and 1,225 of these jobs in the region where Plaintiff resides. (*Id.*)

During his cross-examination, Plaintiff's counsel asked the vocational expert, hypothetically, whether a claimant would be able to perform as a surveillance systems monitor if he was not able to sit more than two hours or stand or walk more than two hours in a work day. (*Id.* 327) The vocational expert responded by asking whether Plaintiff's counsel was assuming that the claimant would only be able to work four hours total in a given work day, to which Plaintiff's counsel replied in the affirmative. (*Id.*) The vocational expert then replied that because the work day for a surveillance systems monitor is "normally eight hours," the hypothetical claimant who could only work a total of four hours in a given work day "would not

be able to do that job." (*Id.* 328.)  Plaintiff's counsel next asked the vocational expert whether a person who needed to take naps during the work day would be able to work as a surveillance systems monitor.  (*Id.*)  The vocational expert responded that taking naps during the work day is not in the "normal realm" of this position.  (*Id.*)

As noted above, in examining the ALJ's decision, "it is not [the Court's] function to determine *de novo* whether [P]laintiff is disabled," *Novak v. Astrue*, No. 07-CV-8435, 2008 WL 2882638, at *2 (S.D.N.Y. July 25, 2008) (internal quotation marks and brackets omitted). Rather, the Court must determine whether the ALJ's conclusions "'are supported by substantial evidence in the record as a whole or are based on an erroneous legal standard.'" *Todman v. Astrue*, No. 07-CV-10473, 2009 WL 874222, at *9 (S.D.N.Y. Mar. 30, 2009) (quoting *Beauvoir v. Chater*, 104 F.3d 1432, 1433 (2d Cir. 1997)).  Here, Plaintiff does not argue that an improper legal standard was applied.  Thus, the only question is whether there is substantial evidence in the record that supports the ALJ's determination that Plaintiff could work as a surveillance systems monitor.

Although Plaintiff testified that after walking almost two blocks he feels tired and has to stand for a while (AR 308), Plaintiff did not testify as to the total number of hours he can sit or stand or walk in a day.  Moreover, Dr. Lovelace did not indicate a total number of hours that Plaintiff could either sit or stand in an eight-hour work day.  (*Id.* 232.)  Instead, Dr. Lovelace only noted that Plaintiff needed to get up and move around for five minutes after twenty minutes of sitting.  (*Id.*)  Additionally, it does not follow, as Plaintiff suggests, that the fact that Plaintiff has to get up and move around every twenty minutes or so during a given work day automatically means he could only work four hours total in a given day.  *See Poupore v. Astrue*,

566 F.2d 303, 306 (2d Cir. 2009) ("As this Court has previously stated, the requirement that [Plaintiff] get up and move around from time to time does not preclude his ability to perform sedentary work."); *Halloran v. Barnhart*, 326 F.3d 28, 33 (2d Cir. 2004) (same).

Furthermore, the assumptions posed to the vocational expert by Plaintiff's counsel were not based on the medical record, and therefore the ALJ need not have relied on that testimony. For example, Plaintiff's counsel asked the vocational expert whether a claimant could work as a surveillance systems monitor if the claimant could only work for a total of four hours in a typical work day. However, there is no evidence in the medical record indicating that Plaintiff would not be able to work more than four hours in a typical eight-hour work day. Thus, the ALJ committed no error in electing not to credit this testimony. *Cf. Aubeuf v. Schweiker*, 649 F.2d 107, 114 (2d Cir. 1981) (holding that vocational expert's testimony should not be relied upon where the assumptions on which the vocational expert relied upon were not supported by the record); *Rodriguez v. Astrue*, No. 07-CV-3309, 2008 WL 2073508, at *12 (S.D.N.Y. May 14, 2008) ("Because there is no factual basis in the record to support the hypothetical assumption of absenteeism put to the vocational expert, his opinion is meaningless." (internal quotation marks omitted)). On the other hand, the assumptions that the ALJ asked the vocational expert to consider were consistent with the medical record. Accordingly, the ALJ correctly relied on the vocational expert's testimony in finding that Plaintiff could obtain work and therefore was not entitled to disability benefits under the fifth step of the analysis. *See Dumas v. Schweiker*, 712 F.2d 1545, 1553-54 (2d Cir. 1983) (noting that the ALJ may rely on the testimony of a vocational expert in response to a hypothetical regarding the availability of jobs in the national economy, so long as the hypothetical is based on substantial evidence); *Henry v. Astrue*, No. 07-

CV-957, 2008 WL 5330523, at *11 (S.D.N.Y. Dec. 17, 2008) (finding that plaintiff's particular symptoms, including plaintiff's difficulty in walking and standing, were incorporated into the ALJ's determination that plaintiff needed a sit/stand work option with change every thirty to sixty minutes and therefore did not need to be specifically included in the hypothetical posed to the vocational expert); *Gittens v. Astrue*, No. 07-CV-1397, 2008 WL 2787723, at *7 (S.D.N.Y. June 23, 2008) (holding that the hypothetical effectively assumed the evidence as ultimately found and therefore properly reflected all of plaintiff's impairments and limitations).

The Court is also unpersuaded by Plaintiff's second objection, regarding the ALJ's treatment of Plaintiff's testimony. While Social Security regulations require an ALJ to consider a claimant's subjective testimony regarding his symptoms in determining whether he is disabled, *see* 20 C.F.R. § 404.1529(a); *Hardhardt v. Astrue*, No. 05-CV-2229, 2008 WL 2244995, at *10 (E.D.N.Y. May 29, 2008); *cf. Li v. Mukasey*, 529 F.3d 141, 148 (2d Cir. 2008) (noting that in Social Security disability cases, the agency's own regulations require an ALJ to assist claimants in developing the record), here the ALJ committed no error. Indeed, the ALJ explicitly noted that he took into consideration Plaintiff's testimony.[7] (AR 15.) Significantly, Plaintiff never testified that he needed to take naps during the day. While Plaintiff mentioned that he is often tired and sleeps better during the day, either due to lack of sleep or as a side effect to the medication he is taking, he never said he needed regular daytime naps. (AR 308-12.) Because Plaintiff was not working at the time, no inference can be made from his testimony that he therefore needed to take naps "on the job." In fact, the ALJ asked Plaintiff how he spent his

---

[7] The ALJ also gave proper consideration to Plaintiff's treating physician's opinion (AR 15), and Plaintiff does not claim otherwise.

morning and afternoons, and Plaintiff explained that he would eat meals, go to therapy, and sit or lay down in his chair.  (*Id.* 310-12.)  Nor did Plaintiff's counsel ask Plaintiff if he needed to take daily naps.  (*Id.* 322-325.)  Further, the medical record (including Dr. Lovelace's information), discussed thoroughly in Magistrate Judge Fox's R&R, does not mention Plaintiff's need for naps.  However, even if Plaintiff had testified that he needed to take naps during the work day, the ALJ had discretion to discount the credibility of Plaintiff's claim in light of the medical record.  *See* 20 C.F.R. § 416.929 ("[S]tatements about your pain or other symptoms will not alone establish that you are disabled; there must be medical signs and laboratory findings which show that you have a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged . . . ."); *Pietrunti v. Director, Office of Workers' Comp. Programs*, 119 F.3d 1035, 1042 (2d Cir. 1997) ("As a fact-finder, the ALJ has the discretion to evaluate the credibility of a claimant and to arrive at an independent judgment, in light of medical evidence and other findings."); *Garcia v. Astrue*, No. 07-CV-6658, 2009 WL 212405, at *7 (S.D.N.Y. Jan. 29, 2009) ("The ALJ had significant discretion to discount the credibility of Plaintiff's complaints in light of medical findings and other objective evidence." (internal quotation marks omitted)); *Gates v. Barnhart*, No. 05-CV-6732, 2008 WL 2622932, at *6 (W.D.N.Y. June 30, 2008) (upholding ALJ's denial of disability benefits in face of plaintiff's subjective complaint that the medication he was on for anxiety made him drowsy and required him to nap, where there was no evidence in the record that he had sought to have his medication adjusted); *Jordan v. Apfel*, 192 F. Supp. 2d 8, 14 (W.D.N.Y. July 11, 2001) (noting that claimant's testimony that he required three to five naps each day was inconsistent with the medical evidence).  Therefore, even if Plaintiff's testimony could be construed as contending

12

that he needed to take daily naps, there would still be substantial evidence in the record supporting the ALJ's conclusion that Plaintiff was not eligible for disability benefits.  *Cf. Novak*, 2008 WL 2882638, at *2 (noting that "[e]ven if there is also substantial evidence for the plaintiff's position, if substantial evidence exists to support the [ALJ]'s decision, the decision must be affirmed" (internal quotation marks omitted)).

As a final point, Plaintiff claims that "relegat[ing]" Plaintiff to a surveillance systems monitor position would be a "drastic change" and requests that further development of this "highly questionable" recommendation be allowed.  (Obj. 2.)  Although the fifth step of the analysis requires the ALJ to determine whether there is other work within the national economy that Plaintiff is qualified to perform, *see* 20 C.F.R. § 404.1520(a)(4)(v); *id.* § 404.1520(f); *Peterson*, 219 F. Supp. 2d at 493, this step does not require the ALJ to find Plaintiff other work in the national economy with a salary or job description comparable to what Plaintiff had prior to his accident.  *See Barnhart v. Thomas*, 540 U.S. 20, 25 (2003) (noting that step four determines whether plaintiff can perform his "previous work" and the issue at step five is whether there are *any* appropriate jobs "which exist[] in the national economy" (internal quotation marks omitted)); *Badgley v. Astrue*, No. 07-CV-399, 2009 WL 899432, at *2 (W.D.N.Y. Mar. 27, 2009) (noting that the fifth step requires the ALJ to determine whether the claimant is capable of performing other work that exists in the national economy).  Additionally, Plaintiff points to no cases to support his claim that he is entitled to a job in which he would earn a comparable salary to his pre-disability employment.  Therefore, the ALJ's decision was supported by substantial evidence and correct application of the law, and there is no need to remand the case for further

development of the record.[8]

Having found that Plaintiff's objections are without merit, the Court has reviewed the balance of Magistrate Judge Fox's R&R and finds no clear error.

## II.  Conclusion

For the reasons stated herein, it is hereby

ORDERED that the Report and Recommendation dated November 27, 2007 is adopted in its entirety.  It is further

ORDERED that the Commissioner's motion is GRANTED.  It is further

ORDERED that Plaintiff's cross-motion for judgment on the pleadings is DENIED and Plaintiff's request to remand for further development of the record is also DENIED.  It is further

ORDERED that the Clerk of Court is respectfully directed to terminate the pending motions (Dkt. No. 9), enter a judgment in favor of the Commissioner, and close the case.

SO ORDERED.

Dated:       August 1 3, 2009
             White Plains, New York

                                            KENNETH M. KARAS
                                            UNITED STATES DISTRICT JUDGE

_____

[8] For the first time, in his Objections to Magistrate Judge Fox's R&R, Plaintiff argues that because Dr. Lovelace's reports are dated two years after the disability began in 2002, there is a possibility that Plaintiff was disabled from the date of his accident up until sometime before Dr. Lovelace made his reports. (Obj. 1.)  Accordingly, Plaintiff requests that the Court remand for further development of the record with respect the disability period.  However, Plaintiff had the burden of proving the correct period of his disability, and Plaintiff's belated suggestion that his disability period may have concluded prior to Dr. Lovelace's report is neither corroborated by his own testimony to the ALJ nor supported by the administrative record.  Accordingly, Plaintiff's tardy request to remand for further development of the record with respect to the disability period also is denied.

Service List (by Mail by Clerk's Office):

Joseph P. Kirley, Esq.
149 Grand Street
White Plains, N.Y. 10601

Leslie A. Ramirez-Fisher, Esq.
Assistant United States Attorney
86 Chambers Street, 3rd Floor
New York, N.Y. 10007